[Cite as *Kochaliyev v. Kochaliyeva*, 2025-Ohio-1140.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


|  |  |  |
|---|---|---|
| ABDULLA KOCHALIYEV, | : | |
| Appellant, | : | CASE NO. CA2024-08-055 |
| | : | O P I N I O N |
| - vs - | | 3/31/2025 |
| | : | |
| SEVILYA KOCHALIYEVA, | : | |
| Appellee. | : | |


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 22 DR 43344


DeBra Law, LLC, and Ryan L. DeBra, for appellant.

Legal Aid Society of Southwest Ohio, LLC, and Brian J. Davidson, for appellee.


**HENDRICKSON, P.J.**

{¶ 1} Abdulla Kochaliyev ("Husband") appeals the final judgment and decree of divorce from Sevilya Kochaliyeva ("Wife") issued by the Warren County Common Pleas Court's Domestic Relations Division.

{¶ 2} Husband and Wife were married on March 8, 2014. They had two children during the marriage. On April 22, 2022, Husband filed a complaint for divorce. Wife

answered and counterclaimed for divorce.

{¶ 3} The parties settled many issues related to their divorce, including a stipulation that they should be divorced on grounds of incompatibility and that Mother would be the children's residential parent and legal custodian. Two unresolved issues relevant to this appeal were Husband's income for spousal and child support purposes and whether Husband possessed a separate interest in the marital home. After evidentiary proceedings, the trial court determined that Husband was voluntarily underemployed and imputed annual income to him of $85,000 for spousal and child support purposes and that he had a separate interest in the marital residence of $20,000. A final decree of divorce was issued on July 10, 2024.

{¶ 4} Husband now appeals. Further facts will be discussed below.

{¶ 5} FIRST ASSIGNMENT OF ERROR. THE TRIAL COURT ERRED IN BY PERMITTING A TRIAL TO BE CONDUCTED BY AFFIDAVIT ABSENT MEANINGFUL CROSS-EXAMINATION.

{¶ 6} Husband argues the trial court committed plain error by basing its decision wholly upon impermissible hearsay not subject to cross-examination.

{¶ 7} English is neither party's first language, so each brought a Russian interpreter to the evidentiary hearing before the court. Nonetheless, problems arose because it was difficult to simultaneously interpret and transcribe the parties' Russian testimony into the record. Seeking another way for the parties to present their evidence, the trial court suggested the parties "put in writing [via affidavit] what [they] would be saying, not to necessarily agree with the content, but agree that's what they would say[.]"

{¶ 8} Despite some concerns, counsel for the parties ultimately agreed to proceed in this fashion. In fact, Husband's counsel stated, "I don't really care either way, Your Honor. I think the logistical aspects of this hearing are, I think everyone would agree,

a nightmare. So, anything that would cure that or at least limit it, I am all for it." Husband's counsel requested and was granted time to discuss the foregoing with Husband at the evidentiary hearing, and no objection to the procedure was subsequently raised by Husband's counsel.

{¶ 9} Thereafter, the parties submitted affidavits and other documents in support of their positions on the contested issues. At a subsequent courtroom appearance, it was agreed that each party would be given two weeks to submit written closing arguments, and the trial court would decide disputed issues based upon the parties' affidavits, documents, and written closing arguments. Again, neither Husband nor his counsel made any objection to proceeding in this fashion.

{¶ 10} We note at the onset that because Husband did not raise this issue at the trial level, he has forfeited all but plain error. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). A party asserting plain error must show an obvious error by the trial court that affects that party's "substantial rights" and "'must have affected the outcome of the trial.'" *State v. Rogers*, 2015-Ohio-2459, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). The Supreme Court of Ohio has stressed that the doctrine should only be applied in civil appeals "in *the extremely rare* case involving *exceptional* circumstances where [the] error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss* at 122-123 (Emphasis added.)

{¶ 11} Here, Husband was represented by counsel who indicated on the record that he was "all for" proceeding by affidavit and made no objection to the procedure proposed by the trial court after being afforded an opportunity to consult with Husband. Additionally, Husband had at least two weeks to consider Wife's affidavit before

submitting written closing arguments. Said arguments included none of the objections he now raises on appeal regarding the procedure used by the trial court or the form of the affidavits. *Compare with Tyra v. Tyra,* 2014-Ohio-5732 (1st Dist.) (pro se wife did not assent to proceeding by affidavit and was provided no meaningful opportunity to review husband's affidavit before cross-examining husband). As a result, we conclude this is not one of those "extremely rare cases" where the purported error complained of affected the outcome of the proceedings.

{¶ 12} In addition, we note that pursuant to the "invited error" doctrine, "a party may not 'take advantage of an error which he himself invited or induced.'" *State v. Drain*, 2022-Ohio-3697, ¶ 66, quoting *State v. Campbell*, 90 Ohio St.3d 320, 324, (2000). *See also State v. Nkoyi*, 2024-Ohio-3144, ¶ 16 (12th Dist.).

{¶ 13} Husband's first assignment of error is overruled.

{¶ 14} SECOND ASSIGNMENT OF ERROR. THE TRIAL COURT ERRED BY FAILING TO FIND HUSBAND HAS A SEPARATE PROPERTY INTEREST IN THE MARITAL HOME.

{¶ 15} Next, Husband argues the trial court erred as a matter of law and fact when it found that Husband had only a $20,000 separate interest in the marital home's equity. Husband argues he presented evidence showing a greater interest in the home's equity and that Wife's only evidence on the issue was her affidavit which prevented the trial court from assessing Wife's credibility on the issue.

{¶ 16} The parties agreed that, as of the date of their separation on December 6, 2021, their home was valued at $465,000 with a mortgage balance of $103,820.33. Therefore, the equity in the home as of the parties' separation was $361,179.67. Husband submitted the closing statement for the purchase of the home dated December 8, 2015 showing a price of $370,000 with a $55,000 earnest money deposit and an additional

$48,792.16 due at closing.

{¶ 17} At the trial level, Husband claimed that he had a separate interest of $190,000 in the home's equity based upon loans he received from his mother and brother. Husband submitted a document entitled "Agreement" dated February 10, 2018 (more than two years after the closing on the home) indicating Husband's mother loaned him $80,000 to be used as a down payment on the home, and the loan was to be paid back when Husband later sold the home. Husband also provided a copy of a deed showing that his mother loaned this money after selling her Michigan home on November 12, 2015 for $80,000.

{¶ 18} As to the loans from his brother, Husband offered a document entitled "Loan Agreement" that reflected two loans totaling $90,000 from AZ Express Auto Transportation, LLC and Best Way Truck and Trailer Repair, LLC were to be used to pay down the home mortgage and repaid when the home sold. Husband also claimed to have received a $20,000 cash loan from his brother.

{¶ 19} Wife stated in her affidavit that Husband and his family were "loose and very expedient" with their money and "would move it around, treat it however they wanted, [and] do whatever suited them . . ." including controlling Wife during the marriage and minimizing Husband's financial obligations to her during divorce.

{¶ 20} The court concluded that the loan from Husband's mother was not used as earnest money to purchase the home for multiple reasons: (1) proceeds from the sale of Husband's mother's home would likely not have been able to be used in the purchase of the parties' marital home due to the timing of each sale; (2) the lack of any documentation informing the mortgagee of the source of the earnest money deposit; and (3) the fact that the "loan" was not memorialized in writing for more than two years after it was purportedly made.

{¶ 21} The trial court was similarly skeptical of the purported loan between Husband and his brother because the agreement stated the loans were between Husband and business entities, there was no evidence of who owned the companies, and there were no business records evidencing these loans. After considering these circumstances and Wife's affidavit, the trial court characterized the purported loans as bonuses and part of Husband's compensation for working on behalf of the companies. As to the purported $20,000 cash loan, the court noted there were no bank records confirming the loan and that the Husband would not have used cash at the closing for the marital home.

{¶ 22} Ultimately, the trial court concluded that Husband had not "provided a clear trail" as to these purported loans and only established a $20,000 separate interest in the home's equity as a result of a gift of money from Husband's mother in that amount. The court determined that the balance of the equity, $341,179,67, would be divided equally between the parties.

{¶ 23} Under Ohio law, a party claiming a separate interest in property must establish that interest by a preponderance of the evidence. *Todor v. Ballesteros-Cuberos*, 2024-Ohio-4525, ¶ 9 (12th Dist.), citing *Peck v. Peck*, 96 Ohio App.3d 731, 734 (12th Dist. 1994). "This standard requires the claiming party to demonstrate that it is more likely than not that the asset in question is indeed separate property, rather than marital property subject to division in the divorce proceedings." *Id.* Separate interests in property "may be commingled with marital property without losing its distinct status, provided . . . it remains traceable." *Id.* at ¶ 22, citing R.C. 3105.171(A)(6)(b).

{¶ 24} "A trial court's classification of property as marital or separate is subject to the manifest-weight-of-the-evidence standard of review and will be upheld if it is supported by competent and credible evidence." *Id.* at ¶ 8. Additionally, the trial court's

equitable division of property in divorce proceedings will not be reversed absent an abuse of discretion. *Humbarger v. Cassidy*, 2024-Ohio-5361, ¶ 13 (12th Dist.). An abuse of discretion occurs where the trial court's decision is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 25} Here, the trial court laid out in great detail why it did not believe the purported loans from Husband's mother and brother were used to purchase the marital home, including a lack of appropriate and timely documentation for the loans. As indicated by the trial court, these loans were simply not traceable to the marital home. These observations by the trial court exist independently from and, in fact, gave credence to Wife's assertion that Husband and his family were attempting to minimize Husband's financial obligations to Wife during the divorce. As a result, we find no error in the trial court's conclusion that Husband failed to prove by a preponderance of the evidence that he had a separate interest in the home greater than $20,000.[1]

{¶ 26} This assignment of error is also overruled.

{¶ 27} THIRD ASSIGNMENT OF ERROR. THE TRIAL COURT COMMITTED REVERSABLE ERROR IN CALCULATING THE HUSBAND'S INCOME FOR PURPOSES OF CHILD SUPPORT AND SPOUSAL SUPPORT.

{¶ 28} Finally, Husband contends the trial court erred as a matter of law in determining his child and spousal support obligations by relying on "the impermissible hearsay contained in the expert report of Dr. Kenneth [Manges]" that was not subject to cross examination.

{¶ 29} Wife submitted to the trial court a report from Dr. Manges, a certified

---

1. We recognize that on appeal Husband argues he has only a $100,000 separate interest in the home's equity stemming from the purported $80,000 loan from his mother and $20,000 loan from his brother, but we also discuss the purported $90,000 from his brother to further illustrate how Husband did not sufficiently tie any of these loans to the equity in the marital home.

vocational expert, who determined that Husband was underemployed and had the ability to earn much more than he was at the time of these proceedings. The trial court agreed with Dr. Manges and concluded after reviewing the parties' affidavits and financial data that Husband also underreported his current income. As a result, the trial court assessed Husband's potential imputed income at $85,000 a year for the purpose of calculating his child and spousal support obligations.

{¶ 30} We need not delve into any more factual or legal specifics to overrule this final assignment of error. Similar to Husband's first assignment of error, we conclude that Husband's failure to object to the trial court's plan to receive the parties' evidence and arguments exclusively in writing, including the report of Dr. Manges, means he has waived this argument and invited the purported error he now complains about. Even if an error did occur, we are unable to conclude that the trial court's calculations would have been any different because they did not depend exclusively on Dr. Manges' report.

{¶ 31} This assignment of error is overruled.

{¶ 32} Judgment affirmed.

M. POWELL and BYRNE, JJ., concur.