[Cite as *Cee v. Murphy*, 2025-Ohio-3045.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| JILLIAN M. CEE, | : | |
| | : | Case No. 23CA28 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| | : | |
| JASON M. MURPHY, | : | |
| | : | **RELEASED: 08/19/2025** |
| Defendant-Appellant. | : | |

APPEARANCES:

Jason M. Murphy, Wellston, Ohio, for appellant, pro se.

Stephen K. Sesser, Benson & Sesser, LLC, Chillicothe, Ohio, for appellee.

Wilkin, J.

**{¶1}** James M. Murphy appeals the trial court's decision of the Ross County Court of Common Pleas in which the trial court granted both Murphy and Cee a divorce. Murphy presents ten assignments of error challenging the trial court's allocation of property. We find no abuse of discretion by the trial court's equitable division of Murphy and Cee's properties. The division is supported by competent, credible evidence. Accordingly, we overrule Murphy's assignments of error and affirm the trial court's judgment.

FACTS AND PROCEDURAL BACKGROUND

**{¶2}** In 2015, Murphy and Cee began dating. At the time, each owned their own house. Cee's home was purchased in 2013 and was located on Kentucky Circle in Marysville, Ohio. Murphy's home was purchased in 2004 and was located on Big Plain in London, Ohio.

{¶3} In 2016, Cee discovered she was pregnant. Cee and Murphy decided in December 2016 to move in together prior to getting married, which occurred on February 20, 2018. In December 2016, Cee's mother was residing with her and so were Cee's other children. Thus, Murphy moved out of his home located on Big Plain in London, Ohio, and moved in with Cee and her children at her Marysville home. At the time, Murphy was remodeling his London house, which he continued to do and then began renting it out.

{¶4} Prior to moving in together, Cee and Murphy jointly signed a real estate purchase contract of two adjoining lots on Loop Road: 0 Loop Road and 1036 Loop Road, in Wellston, Ohio. The total purchase price was $112,500. Cee and Murphy's names were on the Loop Road property deeds which they both signed in December 2016. At the time of closing, Murphy contributed $55,760.70 of his own funds, and Cee contributed $1,171.21 of her own funds. The money was used to pay off the full cost of 0 Loop Road and partial cost of 1036 Loop Road. The remainder of the balance of the 1036 Loop Road was funded through a mortgage. Murphy was the sole borrower of the mortgage.

{¶5} Cee and Murphy's child was born in July 2017, while they still resided at the Marysville home. In May 2020, the parties agreed to jointly purchase 5632 Higby Road, which is located in Chillicothe, Ohio. It was also agreed that Cee's mother, who has resided with Cee for many years, was not going to move in with them at the Higby Road location. Thus, Cee's mother purchased a different home, 188 Plyleys Lane, which is also located in Chillicothe. With the purchase of the new house at Higby Road, Cee sold her home in Marysville and netted

$105,798.82. The closings of the Marysville house and Plyleys Lane house were held at the same time. Cee co-signed for the mortgage loan with her mother for the Plyleys Lane property, but Cee was not added to the deed. In addition to co-signing, Cee contributed $10,172.42, toward the Plyleys Lane down payment/closing costs. The proceeds were directly transferred from the net sale of the Marysville property to the Plyleys Lane purchase fund.

{¶6} In October 2021, Cee filed a complaint for divorce and moved out of the Higby residence and moved in with her mother at the Plyleys Lane house. Murphy answered and filed a counterclaim for divorce. While the divorce was pending, in February 2022, Cee's mother sold the Plyleys Lane home and Cee in March 2022, through a trust, purchased a home on Applewood Drive, also located in Chillicothe.[1] Cee's mother received $26,467.41 from the sale of the Plyleys Lane house, which she gave to Cee as contribution for the down payment of the Applewood house. Cee's mother after selling her home in Plyleys Lane moved in with Cee and her children at the Applewood house.

{¶7} Cee and Murphy were able to agree with regard to their child's visitation and allocation of parental rights, but not to the distribution of property. Further, the parties were unable to agree on the distribution of retirement accounts. Accordingly, a two-day hearing was held. At the conclusion of the hearings, and after Murphy's objection to the magistrate's decision, the trial court made the following relevant findings with regard to the distribution of property and debts:

---

[1] Cee's purchase of the Applewood house was in violation of a mutual restraining order which prohibited both from selling or purchasing any property while the divorce was pending.

- Any reduction in the amount of mortgage paid for by marital funds is marital property.

- For the Kentucky Circle property – the trial court determined it to be Cee's separate property and any traceable proceeds from the sale, are hers alone.  But with the reduction in mortgage from when they began living together to the sale in May 2020, the trial court determined that Murphy is entitled to half of that reduction amount.

- Higby Road property – the sale proceeds will be equally divided between the parties.

- Loop Road properties are determined to be marital.  The court explained that although they did not live there together, Cee and Murphy jointly owned them.  As Murphy currently resides at the 1036 Loop Road cabin, the trial court allocated the property to Murphy but ordered him to pay Cee $47,494.28.  This amount was calculated from the property's stipulated value and then subtracting the down payments and mortgage balance, dividing the result by two, and adding Cee's down payment back.

- Plyleys Lane property was determined to be Cee's mother's but because Cee paid the mortgage on the property until it sold, the trial court granted Murphy half of the mortgage reduction during the time Cee's mother owned it.  However, the trial court determined that the proceeds given to Cee from her mother of $26,467.41 to be a gift and not marital property.

- Applewood Drive property was determined to be Cee's own property and determined that the down payment was traceable to Cee's separate funds.  And since the purchase was recent, the property had no equity to divide.

- Big Plain property – The trial court determined it to be Murphy's separate property but granted Cee one-half of the mortgage reduction amount from the time they moved together in December 2016 to when it was paid off in April 2021.

- As for vehicles, the trial court determined that each will be awarded their own vehicles and solely responsible for any remaining debt.  The trial court additionally awarded Cee the trailer.

- As for retirement accounts, the trial court found that Cee's retirement account with Lazarus to be her own personal fund, and also found Murphy's retirement account with Capital Group to be his separate account.  However, with regard to Murphy's retirement account with

NiSource, which was his employer at the time the parties were together, the trial court awarded equal distribution from the date of their marriage, February 2018 to their separation date of October 2021.

- As for the bank accounts, the trial court determined that Cee's checking and savings accounts to be her separate property. However, for Murphy, the trial court ordered the total in his checking and savings accounts of $11,794.85 to be divided equally.

- With regard to credit card debt, the trial court determined that the Home Depot card balance to be divided equally.

- Finally, the trial court found Cee in contempt and ordered her to pay Murphy $250.

{¶8} It is from this judgment of decree that Murphy appeals.

ASSIGNMENTS OF ERROR

I.     The trial court erred as a matter of law to the prejudice of Jason and abused its discretion in decreeing December 2016 as "during the marriage" in determining "marital property" division. The couples actual February 20, 2018, date of marriage, provides for a more "fair and equitable" distribution.

II.    The trial court erred as a matter of law to the prejudice of Jason and abused its discretion when it determined as marital assets those assets which can specifically be traced to Jason before the marriage, specifically the real estate at 1036 Loop [R]d and 0 Loop Rd.

III.   The trial court erred as a matter of law to the prejudice of and abused its discretion in determining that "premarital property" division, of Jason's London home and Jillian's Kentucky Circle home, be determined using only a 50/50 paydown formula for each individual property.

IV.    The trial court erred as a matter of law to the prejudice of Jason and abused its discretion in decreeing Jillian pay Husband $2,787.00 from the proceeds of the Sale of 188 Plyleys Ln, Chillicothe, OH, hereinafter termed Plyley's Ln.

V.     The trial court erred as a matter of law to the prejudice of Jason and abused its discretion when it failed to consider a retirement benefit offset based on the Jillian's testimony that real estate interests were in lieu of her enrollment of an employer sponsored retirement benefit.

VI.    The trial court erred as a matter of law to the prejudice of Jason and abused its discretion in decreeing that Jillian be awarded one half of Jason's JP

Morgan Chase account and Jillian's JP Morgan accounts were ruled "separate property."

VII.    The trial court erred as a matter of law to the prejudice of Jason and abused its discretion when it did not grant a compensatory distribution to Jason for the 7 months of payments made by Jason on the Higby Rd marital property.

VIII.    Trial court erred as a matter of law to the prejudice of Husband and abused its discretion when it decreed that Jason pay half the debt on Jillian's Home Depot card.

IX.    The trial court erred as a of law to the prejudice of Jason and abused its discretion when it did not consider a distribution for refunded money, from the refinance of the Higby Rd property.

X.    The trial court erred as a matter of law and abused its discretion when it determined as marital assets those assets which can specifically be traced to Jason before the marriage, specifically Jason's Utility Trailer.

## APPLICABLE LAW

**{¶9}** Murphy's ten assignments of error challenge the trial court's discretion in allocating property after the parties elect to separate and file for divorce. As the law to the ten assignments of error is similar, we will begin by outlining the applicable law before addressing each assignment of error.

**{¶10}** " 'When a trial court grants a divorce, the court must determine what constitutes the parties' marital property and what constitutes their separate property.' " *Thompson v. Thompson*, 2024-Ohio-2147, ¶ 33 (4th Dist.), quoting *Evans v. Evans*, 2014-Ohio-4450, ¶ 26 (4th Dist.), citing *Barkley v. Barkley*, 119 Ohio App.3d 155 (4th Dist. 1997); R.C. 3105.171(B). And because "the trial court's characterization of the parties' property involves a factual inquiry[,]" we "review such determinations under the standard of manifest weight of the evidence." *Id*. at ¶ 31, citing *Barkley* at 159; *Wylie v. Wylie*, 1996 WL 292044 (4th Dist. May 30, 1996).

{¶11} The civil manifest weight standard of review is the same standard that is applied in criminal cases. *See Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17. Thus, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice warranting reversal. *Douglas v. Boughton*, 2014-Ohio-808, ¶ 19 (4th Dist.). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus. "This standard of review is highly deferential and even "some" evidence is sufficient to sustain the judgment and to prevent a reversal." *Smith v. Smith*, 2019-Ohio-899, ¶ 44 (4th Dist.), citing *Barkley* at 159.

{¶12} We are also mindful that

> "Trial courts enjoy broad discretion when dividing marital property in a divorce proceeding." *Jenkins v. Jenkins*, 4th Dist. Highland No. 19CA19, 2021-Ohio-153, ¶ 32, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989). Therefore, "an appellate court will not reverse a trial court's decision regarding the allocation of marital property absent an abuse of that discretion." *Id.*, citing *Elliott v. Elliott*, 4th Dist. Ross No. 05CA2823, 2005-Ohio-5405, ¶ 17.

*Thompson* at ¶ 62.

{¶13} An abuse of discretion "is more than a mere error of law or judgment; it implies that a trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Martin*, 2017-Ohio-7556, ¶ 27, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶14} Domestic relations courts' determination of whether an asset is marital or separate property are governed by R.C. 3105.171. The provision provides that the trial court shall determine "what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." R.C. 3105.171(B). In conducting an equitable division, the provision provides that

> the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
> (2) Each spouse shall be considered to have contributed equally to the production and acquisition of marital property.

R.C. 3105.171(C)(1) and (2).

{¶15} To assist the trial court, the provision provides several definitions and factors for the trial court to consider. This includes, as pertinent to the case at bar, the definition of "during the marriage" as

> whichever of the following is applicable:
> (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
> (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

R.C. 3105.171(A)(2).

**{¶16}** The definition of "marital property" as pertinent here is defined as follows:

> (3)(a) "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:
>
> (i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
>
> (ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
>
> (iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;
>
> . . .
>
> (b) "Marital property" does not include any separate property.

R.C. 3105.171(A)(3)(a)(i), (ii) and (iii); and R.C. 3105.171(A)(3)(b).

**{¶17}** The provision continues with defining "separate property" and as relevant here includes:

> (6)(a) . . . all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
>
> (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
>
> (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
>
> . . .
>
> (vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.
>
> (b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.

R.C. 3105.171(A)(6)(a)(ii), (iii), and (vii); and R.C. 3105.171(A)(6)(b).

**{¶18}** The provision mandates that the "court shall disburse a spouse's separate property to that spouse. If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse." R.C. 3105.171(D). One of the exceptions in disbursing a spouse their separate property is "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C. 3105.171(E)(4).

**{¶19}** Moreover, the provision states that "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." R.C. 3105.171(G). Finally, the statutory provision provides the trial court with factors to consider "in determining whether to make and the amount of any distributive award under this section" including:

(1) The duration of the marriage;
(2) The assets and liabilities of the spouses;
(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
(4) The liquidity of the property to be distributed;
(5) The economic desirability of retaining intact an asset or an interest in an asset;
(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;
(10) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.171(F).

**{¶20}** To aid the trial court, caselaw provides that "a party claiming a separate interest in property must establish that interest by a preponderance of the evidence." *Kochaliyev v. Kochaliyeva*, 2025-Ohio-1140, ¶ 23 (12th Dist.), citing *Todor v. Ballesteros-Cuberos*, 2024-Ohio-4525, ¶ 9 (12th Dist.).

> "This standard requires the claiming party to demonstrate that it is more likely than not that the asset in question is indeed separate property, rather than marital property subject to division in the divorce proceedings." *Id.* Separate interests in property "may be commingled with marital property without losing its distinct status, provided ... it remains traceable." *Id.* at ¶ 22, citing R.C. 3105.171(A)(6)(b).

*Id.*

**{¶21}** Additionally, "there are two separate inquiries with respect to dividing property, especially where real property is concerned: (1) is the property itself separate, and if so, (2) is the appreciation of that property considered separate property that is independently traceable." *Beyer v. Beyer*, 2024-Ohio-1278, ¶ 8 (8th Dist.). And

> if one spouse traces the property to a premarital purchase with separate funds, that real property acquired before marriage is deemed separate property. R.C. 3105.171(A)(6)(a)(ii) and (A)(6)(b). After that, the inquiry shifts to the appreciation or passive income derived from that separate property, which also remains separate property under a different provision of the statute, R.C. 3105.171(A)(6)(a)(iii), *if the passive income or appreciation is traceable*. Appreciation and income derived from separate property

is a separate consideration under the statute, which is addressed only if the property is deemed separate property. (Emphasis added).

*Id.* at ¶ 9.

**{¶22}** The Eighth District Court of Appeals in *Beyer* continued to explain that

not all appreciation or income from property is considered separate property. If the income or appreciation of separate property is "due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage" that appreciation or income is deemed marital property. R.C. 3105.171(A)(3)(a)(iii). Thus, in order to demonstrate that the appreciation and income derived from the separate property should remain separate property, the proponent must demonstrate that the appreciation of the asset or the income derived therefrom is traceable as separate property. *See, e.g., Ockunzzi* at ¶ 23. But if the appreciation or income was due to marital labor or funds, the appreciation or income is considered marital property. Even if the appreciation or income was due to marital labor or funds, however, that does not convert the separate property into marital property. Only the appreciation or income on or from the separate property is deemed marital property. R.C. 3105.171(A)(3)(a)(iii).

*Id.* at ¶ 10.

**{¶23}** Additionally, we have held that " 'property acquired during the marriage is presumed to be marital in nature unless it can be shown to be separate.' " *Thompson*, 2024-Ohio-2147, ¶ 33 (4th Dist.), quoting *Barkley*, 119 Ohio App.3d 155, 160 (4th Dist. 1997). And "[t]he general rule in Ohio is that income earned by labor performed during the marriage is marital property whether received during or after the marriage." *Vanderink v. Vanderink*, 2018-Ohio-3328, ¶ 29 (5th Dist.), citing *Schweinfurth v. Meza*, 2002-Ohio-6316, ¶ 19 (8th Dist.); R.C. 3105.171(A)(3)(a)(iii).

**{¶24}** With the above law in mind, we now address Murphy's ten assignments of error.

ANALYSIS

I.       First assignment of error

**{¶25}** Murphy maintains that the trial court's decision in determining that the "during the marriage" date was December 2016, was arbitrary and unreasonable.  Murphy asserts that the evidence demonstrated that although in December 2016, he and Cee began living together, they maintained separate finances and Murphy continued to have his own home.

**{¶26}** Cee disagrees and states that the trial court is not constrained to the exact ceremonial date of the marriage, and in this case, properly determined the "during the marriage" date began in December 2016.  This is because the parties in December began living together and Cee was pregnant with their child during this period.  Further, during that time, the parties were sharing financial responsibilities, such as paying down mortgages on their respective properties. Therefore, Cee concludes that there is competent, credible evidence supporting the trial court's decision to use December 2016 as the beginning of "during the marriage" date.

**{¶27}** We agree with Cee and find that the trial court did not abuse its discretion in finding that December 2016 was the beginning date of "during the marriage."

**{¶28}** " 'Prior to dividing a couples' property and debts, the trial court must determine the duration of the marriage by pinpointing the time period that will be

considered "during the marriage." ' " *Owens v. Owens*, 2022-Ohio-3450, ¶ 18

(1st Dist.), quoting *Elliot-Thomas v. Lewis*, 2019-Ohio-3870, ¶ 5 (9th Dist.), citing

*Tustin v. Tustin*, 2015-Ohio-3454, ¶ 17 (9th Dist.). The First District Court of

Appeals in *Owens* elaborated

> " 'As a general matter, a trial court should consistently apply the same set of dates when evaluating marital property that is subject to division and distribution in a divorce proceeding.' " *Kachmar v. Kachmar*, 7th Dist. Mahoning No. 08 MA 90, 2010-Ohio-1311, ¶ 47, citing *Angles v. Angles*, 5th Dist. Fairfield No. 00CA1, 2000 WL 1369958, * , 2000 Ohio App. LEXIS 4281, *12 (Sept. 15, 2000). "If the circumstances of a given case so require, the trial court may choose different dates for valuation purposes so long as the court adequately explains its reasons, and its decision does not constitute an abuse of discretion." *Id.*, citing *Angles*.
>
> . . .
> "Nevertheless, the Ohio Supreme Court has stated that equity may occasionally require the trial court to choose a de facto termination of marriage date." *Id.*, citing *Barish v. Barish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982); *see* R.C. 3105.171(A)(2)(b). "Generally, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, continually maintain separate residences, separate business activities and/or separate bank accounts." *Id.* at ¶ 11, citing *Gullia v. Gullia*, 93 Ohio App.3d 653, 666, 639 N.E.2d 822 (8th Dist.1994).

*Id.* at ¶ 19.

> **{¶29}** R.C. 3105.171(A)(2) defines "[d]uring the marriage" as:
>
> whichever of the following is applicable:
>     (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
>     (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

{¶30} In the matter at bar, the trial court determined the beginning date to be December 2016. We find no abuse of discretion as that date corresponds to when Cee and Murphy began living together as a family. Murphy stipulated that in December 2016, he moved into Cee's Marysville house after discovering Cee was pregnant. After he moved in, they set up the nursery room for their daughter at the Marysville house. Additionally, Murphy testified that during that time he considered the Marysville house as their marital home. What is more, he admitted that during that time, he and Cee were discussing marriage but it kept getting shelved until February 20, 2018, when they got married in Las Vegas. And after they were married, Cee and Murphy continued to live at the Marysville home until the filing of the first divorce in July 2019, but they reconciled in September 2019. And the first divorce filing was dismissed in December 2019.

{¶31} Moreover, while they resided in the Marysville house, Cee was making the full mortgage payment and Murphy was paying the mortgage to both his London house and the Loop Road property. This was their agreement in order to tackle paying down the mortgages on all properties.

{¶32} As the above demonstrates, the trial court did not abuse its discretion in selecting December 2016 as the equitable date in determining marital property. Therefore, we overrule Murphy's first assignment of error.

II.      Second assignment of error

{¶33} Murphy argues that the trial court erred in determining that the two properties at Loop Road, which were simultaneously purchased on December 6, 2016, are marital property. The evidence according to Murphy demonstrated that

he used premarital funds to purchase the property at 0 Loop Road, and paid the down payment for the property at 1036 Loop Road from premarital funds. Moreover, the remaining balance for the 1036 Loop Road was mortgaged solely in Murphy's name. Additionally, Murphy paid the mortgage, taxes, and insurance for the 1036 Loop Road property. Murphy acknowledges that Cee was added to the deed of the Loop Road properties, but maintains that it was not intended as a gift. And contends that Cee was added because she promised to add Murphy on the deed of her property in Marysville, but she reneged on her promise.

{¶34} Murphy also disputes Cee's testimony that the $1,171.32 check dated April 2016, and payable to Elite Land Title, went toward the closing of the Loop Road properties that were bought in December 2016 with the assistance of Lanco Title agency. Murphy concludes his argument reiterating that he used his premarital funds to purchase the 0 Loop Road property and used his premarital funds for the down payment of the 1036 Loop Road property. The remainder of the 1036 Loop Road property balance was mortgaged in his name as the sole borrower. And at the time of separation, there was a balance remaining on the mortgage. Murphy asserts that the only arguable marital money would be the difference in the mortgage balance between the marriage date of February 2018, and time of separation, a paydown amount of $20,483.

{¶35} Cee disagrees and contends that the Loop Road properties were purchased jointly with both she and Murphy jointly agreeing to the purchase contract back in May 2016. And the properties are jointly deeded to Cee and Murphy. What is more, there was a stipulation that Murphy used premarital

funds of $55,760.76 and that Cee paid $1,171.21 of her premarital funds toward the closing. Finally, Cee asserts that there was no supporting evidence to Murphy's claim that there was an agreement to add his name to Cee's premarital home in Marysville.

**{¶36}** We agree with Cee. First, during his testimony, Murphy agreed with the stipulation that Cee paid $1,171.21 toward the purchase of the two adjacent lots on Loop Road.[2] Second, Murphy also confirmed that back in April 2016, both he and Cee signed the contract to purchase the properties, and both attended the closing of the properties on December 6, 2016. Further, both he and Cee were added to the deed of the properties. Additionally, Murphy confirmed that Cee purchased appliances and flooring for the cabin on one of the Loop Road lots and she testified that she was going there with her daughter.

**{¶37}** Moreover, Murphy testified that Cee had discussed with him how she always wanted to own a cabin. This was one of her dreams. And that they discussed building a house on the property, but that after researching the issue, it was not financially feasible as the properties have a steep terrain.

**{¶38}** Based on the evidence submitted, we find the trial court did not abuse its discretion in determining that Cee and Murphy jointly purchased the Loop Road properties, and its determination is supported by competent credible evidence. It is true that Murphy paid the mortgage payments, but that was an agreement the parties had made. Cee was paying the more expensive mortgage payment on the Kentucky Circle house while Murphy made the lower mortgage

---

[2] The two lots are connected and one lot has a cabin and 30 acres, and the other lot has 26 acres. The total purchase price for the two lots was $112,500.

payments on his London property and Loop Road properties.  By his own testimony, Murphy stated that the Marysville mortgage was more than the London and Loop property mortgages combined.

{¶39} Therefore, we overrule Murphy's second assignment of error.

### III.    Third assignment of error

{¶40} Murphy argues that the trial court's division of his pre-marital owned property in London and Cee's pre-marital Marysville property was arbitrary and unreasonable.  Murphy again challenges the trial court's utilization of December 2016 as the beginning date for "during the marriage" and not the actual marriage date.  Murphy also asserts that the trial court failed to consider the appropriate factors, and instead, utilized the 50/50 mortgage paydown formula.  And based on the trial court's unreasonable division, he was ordered to pay $23,746.05 to Cee as her equity from the London property, and she was ordered to pay Murphy only $8,202.21 from the $105,798.82 she received after selling her Marysville residence.  According to Murphy, this is inequitable and unreasonable.

{¶41} Cee in response contends that it was not an abuse of discretion for the trial court to award each party the mortgage paydown from the London and Marysville property from the date of December 2016 until October 2021, the stipulated date of separation.  Further, it was not an abuse of discretion when the trial court determined that the proceeds from the sale of the Marysville property were not marital.  Cee concludes that she presented evidence to support that the proceeds were left untouched in her savings bank account.

{¶42} The evidence supports the trial court's division of the pre-marital Marysville and London properties.  Cee purchased her Marysville house back in 2013, and Murphy purchased his house in London back in 2004.  The parties began residing at the Marysville house in 2016, and during that time, there was a mortgage balance remaining on both properties.  The parties agreed that Cee would continue to pay the full mortgage payment on the Marysville property and Murphy would pay the mortgage payment on the London property.  And as previously stated, the Marysville mortgage payment was greater than the London property.  During that time, Murphy was able to update the London property and began renting it out within months of moving into the Marysville house, and was receiving rent payments of $900 a month.

{¶43} Murphy is correct that there is a monetary difference between the amount of mortgage paydowns between the properties, but this numerical difference is due to the values of the properties.  In December 2016, the Marysville property had a mortgage balance of $231,251.20 and when it was sold in May 2020, the remaining mortgage balance was $214,810.77.  The London property had a mortgage balance of $47,492.10 and was paid off in April 2021.  The trial court applied the same equitable calculation to both.

{¶44} Moreover, the trial court granted Murphy the London property as his, and per the evidence, it was valued at $130,000.  And the trial court determined the same for the Maryville property and determined the sale proceeds were the sole property of Cee.  This finding is supported by Cee's evidence in which she

met her burden of demonstrating that she did not mingle the proceeds with marital assets; that is, she established the traceability of the money.

{¶45} Therefore, we overrule Murphy's third assignment of error.

IV.     Fourth assignment of error

{¶46} Murphy argues that the trial court abused its discretion when it solely awarded Murphy the paydown amount of $2,787.00 from the sale of the property on Plyleys Lane.  The property was purchased during the marriage, and even though Cee was simply a cosigner on the mortgage of the property that was titled to her mother, Cee paid the down payment and the mortgage.  And when the property was sold, the proceeds of $26,467.41 went to Cee, which she used as down payment to purchase property on Applewood Drive.  Murphy maintains the proceeds should have been divided equally with him, and the trial court arbitrarily determined the proceeds were a gift to Cee from her mother.

{¶47} Cee disagrees and contends that the evidence demonstrated that the Plyleys Lane property was purchased by her mother and her mother was the sole person on the deed of the property.  Cee was simply a loan cosigner. Further, the down payment Cee gifted to her mother came from the sale proceeds of the Marysville property, which are Cee's sole assets.  And then when her mother sold Plyleys Lane, her mother gifted her $26,467.41 toward the down payment to the Applewood Drive house.

{¶48} We find that the trial court's decision to only grant Murphy half of the mortgage reduction of the Plyleys Lane property as equitable and supported by the evidence.  The evidence established that Plyleys Lane was deeded solely in

Cee's mother's name.  Cee was solely a cosigner to the mortgage.  Cee did not hold any ownership to the house, and Murphy was not part of the negotiation or purchase of the house.

{¶49} Further, Cee's closing of the Marysville house occurred just minutes prior to her mother's purchase of the Plyleys Lane house.  Cee submitted evidence demonstrating that the title company at the May 2020 closing, transferred $10,172.42 directly from the Marysville sale proceeds to the down payment of the Plyleys Lane house.  This transfer occurred because Cee was gifting her mother the money.

{¶50} The evidence also demonstrated that from May 2020 to October 2021, date of separation, Cee was paying the mortgage on Plyleys Lane property.  Because Cee was using her income while married to pay her mother's mortgage, the trial court determined that any mortgage reduction during that period of time is marital property and should be divided equally between the parties.  We find no error in that determination.  We reiterate that "[t]he general rule in Ohio is that income earned by labor performed during the marriage is marital property whether received during or after the marriage."  *Vanderink*, 2018-Ohio-3328, ¶ 29 (5th Dist.), citing *Meza*, 2002-Ohio-6316, ¶ 19 (8th Dist.); R.C. 3105.171(A)(3)(a)(iii).

{¶51} Similarly, we find no error in the trial court's determination that the $26,467.41 that Cee's mother gave to Cee in February 2022 after selling the Plyleys Lane house, was a gift and not a marital asset.

{¶52} Cee's mother resided with Cee for years prior to Cee and Murphy's marriage. And when Cee and Murphy began residing together in December 2016, Cee's mother continued to reside with them. This was until July 2019 when the first divorce was filed and Murphy moved out of the Marysville house. Murphy did not get along with Cee's mother, and so, when the parties reconciled in September 2019 and began looking for a place, it was decided that Cee's mother was not going to move in with them. Accordingly, Cee's mother began looking for a house and purchased the house on Plyleys Lane with Cee's financial assistance. But then when Cee and Murphy separated in October 2021, Cee and her daughter moved in with her mother at Plyleys Lane. The house was not ideal for them, so in March 2022, Cee purchased the house on Applewood Drive. This time Cee's mother assisted Cee and gave her the full sale proceeds from Plyleys Lane as part of the down payment on the Applewood house. Cee's mother then moved in with Cee at the Applewood house.

{¶53} We conclude that based on the evidence presented, the trial court equitably determined that the house on Plyleys Lane was not marital property but that the mortgage reduction was and should be equally divided. Therefore, we overrule Murphy's fourth assignment of error.

## V.     Fifth assignment of error

{¶54} Murphy argues that the trial court's division of Murphy's retirement account at NiSource was inequitable when the trial court failed to also grant Murphy a portion of Cee's JP Morgan Chase savings account. According to Murphy, he had no idea that Cee was planning on using the sale proceeds of her

Marysville property as her retirement plan, and, because she was, he should have been entitled to half the proceeds. Murphy maintains that it was unreasonable and arbitrary for the trial court to grant Cee half of Murphy's retirement account but he got no portion of her retirement. The inequity is prejudicial to Murphy as his income is lacking after he was terminated from his job; thus, he is no longer part of an employer retirement account. Murphy moreover asserts that during their marriage, Cee was making much more money than he was.

{¶55} Cee contends that many of Murphy's factual assertions are not supported by the record of the case. And that the evidence demonstrated that Cee did not have a retirement account during the marriage, thus, there was nothing to divide. Further, the proceeds from the sale of the Marysville house were solely her property. Cee met her burden in establishing that she did not mingle the funds with marital assets. Thus, Cee maintains that the trial court did not abuse its discretion in giving Cee half of Murphy's retirement contributions made from the date of their marriage to the date of their separation.

{¶56} We agree with Cee and find that the trial court did not abuse its discretion. The evidence demonstrated that Cee's only retirement account was with Lazarus and none of the contributions occurred while the parties were together. As previously outlined, Cee purchased the Marysville property in 2013, which was prior to the parties being together. And when Cee sold the property in May 2020, she received approximately $105,000. Of that money, she used approximately $10,000 as a gift to her mother to purchase the house on Plyleys

Lane.  And then $88,000 was transferred from her checking to her savings account.  Thus, at the time the parties separated in October 2021, the savings account funds were determined to be her sole property.  We find no error in that determination.

{¶57} Murphy, on the other hand, was contributing to his retirement fund at NiSource while the parties were married.  Thus, the contributions were considered marital.  The trial court determined that the equitable dates would be from the date of marriage (February 20, 2018) to their date of separation (October 1, 2021).  We find no error in that determination.

{¶58} Therefore, we overrule Murphy's fifth assignment of error.

VI.    Sixth assignment of error

{¶59} Murphy argues that the division of his bank accounts with Cee but not dividing the funds in her bank accounts was inequitable and burdensome to him.  Murphy asserts that the trial court's decision not to give him any portion of the funds in Cee's bank accounts was an abuse of discretion.  According to Murphy, Cee was commingling funds from her checking and savings account throughout the marriage, Cee had payroll deposits of over $312,000 and had other deposits of over $263,000, and her savings account did not drop below $80,000.  Thus, Murphy asserts it was erroneous for the trial court not to award him any of the money in Cee's bank accounts, since it is unreasonable to believe that the money left in her savings account was just the proceeds from the sale of the Marysville property.

{¶60} Cee disagrees and maintains that she met her burden in establishing that since May 2020, the sale of Marysville property, the funds in her savings account did not drop below $80,000.  Thus, demonstrating that her savings account was her separate property.  Cee also contends that Murphy's argument is based on facts outside the record and there is no evidence she committed financial misconduct.

{¶61} We find no abuse of discretion in the trial court's decision to divide Murphy's bank account funds equally between them, but not to divide any of Cee's bank accounts with him.

{¶62} The burden to demonstrate separate property is on the party asserting it.  *See Kochaliyev v. Kochaliyeva*, 2025-Ohio-1140, ¶ 23 (12th Dist.).  Cee asserted that the proceeds from the sale of the Marysville house was her separate property.  In order to meet her burden of proof, she testified that after the sale, she transferred $88,000 from her checking account to the savings account.  After the transfer, the savings account did not drop below $80,000.  Cee also submitted her bank statement as an exhibit demonstrating the deposit of the money from the sale of Marysville house into her checking account and then the transfer of the $88,000 to the savings account.  And in October 2021, the savings account had a balance of $81,013.32, and her checking had a balance of $996.16.

{¶63} Murphy did not present any evidence to contradict the traceability of Cee's sale proceeds from the Marysville house.  Thus, based on the evidence before the trial court, there is competent credible evidence that Cee was entitled

to $88,000 as her separate property.  And since, as of October 2021, her bank accounts were $81,013.32 and $996.16, which is slightly below the $88,000, the trial court determined no division was required.  We find no abuse of discretion in that determination.

**{¶64}** Murphy on the other hand, failed to demonstrate that any of the money in his bank accounts as of September 2021, the date the trial court determined to be equitable, were from separate funds other than from employment while married.  Thus, the trial court ordered Murphy's bank accounts totaling $11,794.85 to be divided equally between the parties.  We find no abuse of discretion in that determination.

**{¶65}** Therefore, we overrule Murphy's sixth assignment of error.

### VII.     Seventh assignment of error

**{¶66}** Murphy argues that the trial court erred in not granting him half of the mortgage payments he made at the Higby Road property after Cee ceased to contribute and he made the full payments.  Murphy maintains that Cee abandoned the property in October 2021, moved in with her mother, and then she purchased another house in March 2022.  Murphy maintains that he should have been granted half of the mortgage payments and utilities he made after Cee abandoned the property, and also, for his work in maintaining the property in preparation for its sale.  Further, Murphy contends that the trial court erred in not finding that Cee committed financial misconduct.

**{¶67}** Cee in response asserts that Murphy is alleging facts that are not part of the record of the case. Cee then contends that she stopped paying the mortgage at Higby Road after Murphy was granted exclusive use of the house.

**{¶68}** We find that the trial court did not abuse its discretion in ordering the equal distribution of the Higby Road sale proceeds. Additionally, we find the trial court did not abuse its discretion when it did not find that Cee committed any financial misconduct.

**{¶69}** The "financial misconduct statute should apply only if the spouse engaged in some type of 'wrongdoing.' " *Tittel v. Tittel*, 2021-Ohio-1571, ¶ 30 (4th Dist.), quoting *Jacobs v. Jacobs*, 2003-Ohio-3466, ¶ 23 (4th Dist.). Further,

> [t]he party complaining of the misconduct has the burden of proof. *Vulgamore v. Vulgamore*, 4th Dist. Pike No. 16CA876, 2017-Ohio-4114, ¶ 30, citing *Jacobs* Scioto No. 02CA2846 at ¶ 25. " 'There must be a clear showing that the offending spouse either profited from the alleged misconduct or intentionally defeated the other spouse's distribution of assets.' " *Martindale*, 4th Dist. Athens No. 2019-Ohio-3028 at ¶ 82, quoting *Jacobs* at ¶ 23.

*Id*. at ¶ 31.

**{¶70}** In January 2020, Murphy and Cee purchased the house on Higby Road. They did not, however, move in until May 2020. The evidence submitted established that from January 2020, Cee was paying at least half of the mortgage until May 2020, and then beginning in May 2020 until February 2022, she was paying the full mortgage amount. Cee and Murphy both testified that in October 2021, Cee moved out of the house and began living with her mother. And that in April 2022, Murphy was granted exclusive use of the Higby Road house. It is not reasonable to expect Cee to pay for the mortgage when she is not residing at the

house and there was no court order for her do so.  Thus, we find Murphy failed to meet his burden in demonstrating Cee committed any financial wrongdoing.

{¶71} In September 2022 when the Higby Road house was sold, the sale proceeds were placed in Cee's attorney's trust account, and the parties stipulated that the proceeds would be divided equally between them.  Murphy failed to present any testimony or evidence on the work he completed that assisted in the sale of the Higby Road property.  Thus, there can be no abuse of discretion on an issue that was not presented to the trial court.

{¶72} Therefore, we overrule Murphy's seventh assignment of error.

VIII.     Eighth assignment of error

{¶73} Murphy argues that the trial court erred in finding that he and Cee are equally responsible for the payment of the remaining balance of the Home Depot card.  This is because part of the balance of the Home Depot bill is the Samsung Washer and Dryer which Cee removed and is currently in possession of.  Murphy maintains that because of Cee's violation of the mutual restraining order in which she removed the washer and dryer from the Higby Road marital home while the divorce was pending, she caused Murphy to have to spend over $785 to replace the washer and dryer.  The newly purchased set by Murphy was left with the marital home as part of the sale agreement.  Murphy maintains that Cee alone should be responsible for the payment of the Home Depot card balance.

{¶74} Cee maintains that there was no evidence presented that Murphy purchased another set of washer and dryer.  Additionally, she contends that

there was no evidence that she committed financial misconduct or violated any restraining order by removing the washer and dryer. Finally, the remaining balance on the Home Depot card was marital purchases that should be divided equally.

{¶75} We find no abuse of discretion of the trial court's decision to order the parties to equally pay the $3,774.81 balance on the Home Depot card. Cee testified that the Home Depot card was used to purchase the refrigerator, the microwave, dishwasher, and the washer and dryer set for the Higby Road house back in 2020. When the house was sold, the refrigerator, microwave and dishwasher remained in the house and were part of the sale. Cee took the washer and dryer set. There was no evidence on the monetary cost of each appliance and the monetary value of the items at the time of division. What was submitted was the amount of the remaining balance on the Home Deport card as of October 2021. Thus, the court based on the evidence presented did not abuse its discretion in ordering them to equally pay the remaining balance on the card.

{¶76} Therefore, we overrule Murphy's eighth assignment of error.

IX.     Ninth assignment of error

{¶77} Murphy argues that the trial court erred in not finding Cee financially irresponsible for depositing two refund checks into her personal account and not adding them to the Higby Road mortgage. Murphy maintains that the refund checks that totaled $4,859.62 were refunded to them after they refinanced their marital home. Cee used the money on a Disney vacation instead of rolling it over

to the mortgage.  Thus, according to Murphy, Cee's conduct increased the balance of the mortgage due.

**{¶78}** Cee responds by asserting that the checks were used on a family vacation and the refinance transaction occurred months before the parties separated in October 2021.  Thus, the trial court did not abuse its discretion.

**{¶79}** We agree with Cee and find that the trial court did not abuse its discretion in not addressing the refinance refund money.  Cee and Murphy both testified that they refinanced the Higby Road house to eliminate the mortgage insurance payment since they failed to put down enough money on the property.  After they refinanced, they received two checks totaling approximately $4,700.  The checks were deposited in Cee's checking account.  She testified that the money was spent on a Disney vacation which included airplane tickets, overnight accommodations, and park tickets.  Murphy did not dispute that Cee and his daughter went on a Disney vacation, but testified that Cee's other children and brother and his girlfriend went as well.  But Murphy did not present any evidence on what amounts were spent on Cee and their daughter and what was not.  Moreover, he failed to present any evidence that any of the refund money was still outstanding and still in Cee's checking account.

**{¶80}** Therefore, based on the evidence presented, the trial court did not abuse its discretion in determining that the refund money was spent and not part of what was required to be divided as marital property.  Murphy's ninth assignment of error is overruled.

X.     Tenth assignment of error

{¶81} Murphy argues that the trial court erred in granting the utility trailer as separate property to Cee. Murphy asserts that the trailer was included in his property and debt affidavit and it was not discussed at trial. Yet, the trial court granted Cee the trailer as separate property. Murphy maintains that the trailer was solely used by him and the funds to purchase it were from the sale of the previous trailer he owned before marrying Cee. The previous trailer was sold for $950, and those funds were used to purchase this $1,600 trailer. Thus, the trial court abused its discretion in awarding Cee the trailer.

{¶82} Cee maintains that Murphy's factual assertions are not supported by the record of the case and that the trial court did not abuse its discretion.

{¶83} At trial, both Cee and Murphy testified but neither addressed the trailer. The only reference to a trailer in the record of the case is in Murphy's affidavit filed with his counterclaim for divorce. In the affidavit, which was admitted as an exhibit at trial, Murphy lists properties and identifies which ones he believes are marital and which are separate. As part of his list, Murphy included a 12x6 PJ Trailer that he asserted was worth $1,500, as his separate asset.

{¶84} Even though there was no other evidence presented as to the trailer, we cannot conclude that the trial court's decision was an abuse of discretion and unsupported by competent evidence when it awarded the trailer to Cee. "Self-serving affidavits, without corroboration, generally will not be sufficient to demonstrate material issues of fact." *Bangor v. Amato*, 2014-Ohio-5503, ¶ 32 (7th Dist.). And as stated previously, Murphy has the burden to demonstrate that

the trailer was his separate property.  In this case, we find he failed to meet his burden.  Therefore, the trial court considered the trailer as marital property and had the duty to equitably divide the trailer along with the other marital property.

**{¶85}** We find no abuse of discretion here and overrule Murphy's tenth assignment of error.

## CONCLUSION

**{¶86}** As a reviewing court, we are

> required to examine the overall equity of the division of marital assets and not to conduct a line-by-line analysis of every item of marital property: "[I]t is not this court's role to conduct an item by item review of the marital assets and liabilities. Our review is limited to the equity, i.e., fairness * * *." *Fergus v. Fergus* (1997), 117 Ohio App.3d 432, 438, 690 N.E.2d 949.

*Waller v. Waller*, 163 Ohio App.3d 303, 310, ¶ 7 (7th Dist. 2005).

**{¶87}** But we feel the need to point out here some line-by-line assets that were granted to Murphy to demonstrate the trial court's equitable division.  The trial court granted Murphy the London house and both Loop Road properties, valued at $130,000 and $183,000, respectively.  And at the time of the parties' separation in October 2021, the London house was paid for, and the Loop Road properties had a mortgage balance of $33,420.  Murphy was also granted his truck and according to Murphy, it was valued at $34,000 and was paid for.  Murphy was also granted half of the mortgage paydown of the Marysville house and the Plyleys Lane house totaling approximately $11,000.  Thus, if we add the amounts based on the value of the real estate property, the truck, and mortgage reduction allocation, Murphy was granted approximately $358,000 of assets.

**{¶88}** Cee, on the other hand, was granted the proceeds of $105,798 from the sale of her Marysville house, and the mortgage reduction from the London house and Loop Road properties of approximately $71,000. Cee was granted the Buick vehicle and the trailer which had monetary values attached to them of approximately $12,000 and $1,500, respectively. The other monetary assets she was granted was approximately $5,897 from Murphy's bank accounts and half of distribution of his retirement contributions from February 2018 to October 2021— no amount was provided. The other properties that Cee was granted had no monetary value, including her Jeep that, according to her, she owed more than its value and the Applewood Drive house which had no equity. Thus, if we add the assets that were allocated to Cee, the total is approximately $196,195.

**{¶89}** In essence, we find that the trial court effectively allocated the assets between Cee and Murphy, ensuring the distribution was equitable and that neither party was prejudiced in the process. Accordingly, we overrule all ten of Murphy's assignments of error and affirm the trial court's judgment entry.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Abele, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**