[Cite as *Todor v. Ballesteros-Cuberos*, 2024-Ohio-4525.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| ELENA TODOR, | : | |
| Appellee, | : | CASE NO. CA2024-02-025 |
| | : | O P I N I O N |
| - vs - | | 9/16/2024 |
| | : | |
| ALVARO BALLESTEROS-CUBEROS, | : | |
| Appellant. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR 2022 07 0498

Cornetet, Meyer, Rush & Spillane, and Karen P. Meyer, for appellee.

Caparella-Kraemer & Associates, LLC, and Bradley M. Kraemer, for appellant.


**PIPER, J.**

{¶ 1} Alvaro Ballesteros-Cuberos appeals from the divorce decree entered by the Butler County Domestic Relations Court. He challenges the trial court's classification of certain property as separate or marital property. Finding no error in the court's classifications, we affirm.

## I. Factual and Procedural Background

{¶ 2} Ballesteros-Cuberos and Elena Todor were married on August 20, 2006. They have three children together. The parties separated in 2021, and in July 2022 Todor filed for divorce.

{¶ 3} During the divorce proceedings, the parties disputed the classification of an apartment in New Belgrade, Serbia, that Todor owned, and Ballesteros-Cuberos's Quilter International Pension Fund (valued at €124,750 euros) and bank account in Spain (containing €4,000 euros). After an evidentiary hearing, the trial court found that the apartment was Todor's separate property, having been given as a gift to her alone by her mother. And the court determined that the pension fund and bank account were marital property.

{¶ 4} On January 26, 2024, the court entered the decree of divorce, which awarded Todor the apartment and divided the pension fund and bank account equally.

{¶ 5} Ballesteros-Cuberos appealed.

## II. Analysis

{¶ 6} Ballesteros-Cuberos presents two assignments of error challenging the classification of the apartment in Serbia, the pension fund, and the bank account in Spain.

{¶ 7} The division of property in divorce proceedings follows a two-step process. *Smith v. Smith*, 2023-Ohio-982, ¶ 28 (12th Dist.). The initial step requires the court to classify the parties' property as either marital or separate. *Id.*; R.C. 3105.171(B). Then the court equitably distributes the marital and separate property between the spouses. *Id.* at ¶ 29; R.C. 3105.171(B).

{¶ 8} A trial court's classification of property as marital or separate is subject to the manifest-weight-of-the-evidence standard of review and will be upheld if it is supported by competent and credible evidence. *Id.* at ¶ 28. This standard reflects the

deference given to the court's fact-finding role in these matters.

{¶ 9} Ohio law provides a statutory framework for distinguishing separate and marital property. R.C. 3105.171(A)(3)(a)(i) defines "marital property" as encompassing all real and personal property currently owned by either or both spouses that was acquired during the marriage. Importantly, R.C. 3105.171(A)(3)(b) explicitly excludes separate property from the definition of marital property. Assets that are considered "separate property" are listed in R.C. 3105.171(A)(6)(a). The onus of proving that an asset qualifies as separate property falls on the party making the claim to prove by a preponderance of the evidence. *Peck v. Peck*, 96 Ohio App.3d 731, 734 (12th Dist. 1994). This standard requires the claiming party to demonstrate that it is more likely than not that the asset in question is indeed separate property, rather than marital property subject to division in the divorce proceedings.

## A. The apartment in Serbia

{¶ 10} Ballesteros-Cuberos's first assignment of error alleges:

THE TRIAL COURT ERRED IN NOT FINDING THAT THE APARTMENT IN BELGRADE, SERBIA WAS MARITAL PROPERTY.

{¶ 11} Ballesteros-Cuberos contends that the trial court erred in its determination that Todor's apartment in Serbia was her separate property.

{¶ 12} The statutory list of "separate property" includes "any gift of any real . . . property or of an interest in real . . . property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii). Todor met her burden of proving that the apartment was a gift to her alone.

{¶ 13} Todor testified that her mother had purchased the apartment after the parties' marriage as a gift for her and the children to live in. Todor also presented

- 3 -

documentary evidence in support of her claim—a copy of the "deed" to the apartment listing her as the sole rights holder,[1] a payment order showing the transfer of money from her mother to pay for the apartment, and a letter from her mother stating that she had purchased the apartment.[2]  Todor also presented supporting testimony from her mother, Rahilka Kukovska,[3] who testified remotely from Macedonia.

{¶ 14} Ballesteros-Cuberos raises concerns about the credibility of Kukovska's testimony due to the presence of an unidentified man in the room with her during her remote testimony.  Near the beginning of her testimony, Ballesteros-Cuberos's counsel objected that someone else was in the room translating for Kukovska.  The trial court asked her to identify who was with her, and Kukovska explained that it was the man who helped her with the remote connection.  The court then ordered that the man should leave the room.  Kukovska asked the man to leave, and she confirmed that he had left the room.

{¶ 15} The concern here is about potential translation assistance and ensuring that Kukovska was testifying independently without anyone else present who could influence her testimony.  When the potential problem became apparent early in her testimony, the trial court immediately addressed it.  Ballesteros-Cuberos did not raise any further objection.  Determinations of witness credibility are left to the trial court.  We see no problem in the trial court's assessment of Kukovska's credibility and its admission of her testimony into evidence.

{¶ 16} Ballesteros-Cuberos does not really dispute that Todor's mother purchased

---

1. From the description in the transcript, it appears that this document was the Serbian equivalent of a real-property deed.

2. None of these documents are before us, nor are any of the exhibits presented at the hearing.  It appears from the record that Ballesteros-Cuberos did not request copies of exhibits for purposes of this appeal.

3. This is how her name is spelled in the "Request for Remote Appearance AND Order for Remote Appearance" found in the record. The spelling in the hearing transcript differs.

the apartment and gave it to Todor as a gift. Rather, he contends that the apartment should be classified as marital property because he contributed to its upkeep during the marriage. Be that as it may, this does not transform the gift into marital property. Ballesteros-Cuberos's contributions to the apartment's upkeep during the marriage, while commendable, do not alter its fundamental character as separate property.

{¶ 17} Ballesteros-Cuberos's reliance on *Ray v. Ray*, 2003-Ohio-6323 (9th Dist.), to support his contention is misplaced. That case does not stand for the proposition that a spouse's contributions to the upkeep and expenses of real property render the property, or any portion of it, marital. Indeed, the case says nothing about upkeep and expenses at all. The case does suggest that the reduction of a mortgage during the marriage by payment of marital funds would be marital property. But that is not analogous to contributions to the upkeep of property, unless perhaps it could be shown that the contributions affected the property's value. Regardless, there is no evidence before us of what Ballesteros-Cuberos's contributions were or what effect they might have had on the apartment's value.

{¶ 18} There is competent and credible evidence to support the trial court's finding that the apartment was a gift to Todor alone. We find no error in the court's classification of the apartment as her separate property.

{¶ 19} The first assignment of error is overruled.

### B. The pension fund and bank account

{¶ 20} Ballesteros-Cuberos's second assignment of error alleges:

> THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT'S PENSION FUND AND BANK ACCOUNT IN SPAIN WERE MARITAL PROPERTY.

{¶ 21} Ballesteros-Cuberos next contends that the trial court erred in its determination that his Quilter International Pension Fund and bank account in Spain were

marital property, rather than his separate property.

{¶ 22} A spouse's "separate property" also encompasses any personal property, or interest therein, acquired by the spouse before marriage. R.C. 3105.171(A)(6)(a)(ii). In addition, passive income and appreciation derived from separate property during the marriage retains its separate character. R.C. 3105.171(A)(6)(a)(iii). The statute recognizes that separate property may be commingled with marital property without losing its distinct status, provided, that is, it remains traceable. R.C. 3105.171(A)(6)(b). If separate property is untraceable due to commingling, the property is usually "'transmuted' into marital property," losing its separate quality. *Smith*, 2023-Ohio-982, at ¶ 31, quoting *Tyra v. Tyra*, 2022-Ohio-2504, ¶ 15 (1st Dist.). *See also Bauer v. Bauer*, 2020-Ohio-425, ¶ 31 (12th Dist.) (holding that "[s]eparate property can lose its nonmarital quality when it cannot be clearly traced because of extensive and repeated commingling"). The burden falls on the party claiming separate property to present evidence that "overcomes the effect of commingling" by tracing the separate property. *Smith* at ¶ 31. Ballesteros-Cuberos failed to satisfy this burden.

{¶ 23} Ballesteros-Cuberos testified that the pension fund was established in 2005 and that it was funded solely by contributions from his mother. According to Ballesteros-Cuberos, it was his mother who started the pension fund for him. She would deposit funds into his bank account that were then transferred to the pension fund, which continued during the marriage. He claims that these financial arrangements were in his name alone and intended solely for his benefit.

{¶ 24} While it is undisputed that the pension fund was established in 2005, predating the parties' 2006 marriage, Ballesteros-Cuberos's claim that his mother funded the pension fund lacks any corroborating evidence beyond his own testimony, which itself lacks much specificity. There is a notable absence of documentary evidence

demonstrating his mother's deposits into his bank account or subsequent transfers to the pension fund. Undoubtedly, this is why the trial court, in its written decision, characterized Ballesteros-Cuberos's evidence of his mother's cash contributions to the pension fund as "less than compelling."

{¶ 25} Although the funds contributed to the pension fund before the marriage could be considered Ballesteros-Cuberos's separate property, he failed to provide any evidence tracing those funds. In short, Ballesteros-Cuberos utterly failed to overcome the effect of commingling that occurred after the marriage.

{¶ 26} Regarding his bank account in Spain, the record is devoid of evidence supporting its classification as separate property. Ballesteros-Cuberos's testimony at the hearing did not address the separate nature of this account. Nowhere in his testimony did he say that the money in the bank account came from his mother. We note too that his written closing arguments to the trial court were entirely silent on the bank account.

{¶ 27} In sum, Ballesteros-Cuberos did not present evidence that would have allowed the trial court to classify either the pension fund or the bank account as his separate property. Because he failed to prove his separate-property claims, the court properly classified the property as marital.

{¶ 28} There is competent and credible evidence to support the trial court's finding that the Quilter International Pension Fund and the bank account in Spain are marital property. We find no error in the classification of either.

{¶ 29} The second assignment of error is overruled.

### III. Conclusion

{¶ 30} Having overruled both assignments of error, we affirm trial court's judgment.

BYRNE, P.J., and HENDRICKSON, J., concur.