[Cite as *Moniz v. Moniz*, 2026-Ohio-159.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| SANDI MONIZ, | : | |
| Appellee and Cross-Appellant, | : | CASE NO. CA2025-03-015 |
| vs. | : | OPINION AND JUDGMENT ENTRY 1/20/2026 |
| THOMAS MONIZ, | : | |
| Appellant and Cross-Appellee. | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 21 DR 42975

Mitchell W. Allen, for appellee and cross-appellant.

Smith, Meier & Webb, LPA, and Andrew P. Meier and Chase T. Kirby, for appellant and cross-appellee.

# **O P I N I O N**

**SIEBERT, J.**

{¶ 1}  Sandi and Thomas Moniz ("Wife" and "Husband" respectively) appeal the

decree of divorce entered by the Warren County Court of Common Pleas, Domestic

Relations Division. Each party asserts two assignments of error. In his assignments of error, Husband asserts the magistrate erred by finding one of the parties' bank accounts to be marital property and by failing to equitably divide another account between the parties. In her first assignment of error, Wife argues the court abused its discretion by giving Wife marital assets equaling the purchase price of Husband's new home versus the price of the home as stated in the parties' temporary agreed order. Next, Wife claims the trial court erred by failing to classify and divide custodial accounts held by the parents in the name of their now adult children.

{¶ 2} We overrule each assignment of error. Husband failed to provide sufficient documentary evidence and factually support his arguments regarding the at issue accounts. Wife similarly provided no reason for us to consider the parties' "temporary agreed order" to be a binding contract between the parties which required the trial court to divide the parties' assets differently than it did. Finally, despite Wife's assertion to the contrary, this court has clearly held that domestic relations courts do not have jurisdiction over custodial accounts.

**Brief Factual and Procedural Background**

{¶ 3} The parties were married in 1989. Two children, now adults, were born to the marriage. Wife filed a complaint for divorce on October 20, 2021. After a brief attempt to reconcile, Husband filed a counterclaim on Feb 9, 2022. The magistrate held the parties' final divorce hearing in May and September of 2023 and issued a decision recommending divorce in October of 2023. The magistrate's decision stated that "for the purpose of making a division of marital property," the parties marriage lasted from August 12, 1989, until October 20, 2021, when Wife filed her complaint for divorce. Each party filed objections to the magistrate's decision, but the trial court overruled them all. The trial court issued a divorce decree in February of 2025.

- 2 -

{¶ 4}   Both parties now appeal. Further facts relevant to each parties' assignments of error will be discussed below.

**Husband's First Assignment of Error:
Property Classification of the Merrill Edge Account**

*Factual Background*

{¶ 5}   The parties opened, utilized, and transferred funds to various bank accounts during the marriage. One of these accounts is a Merrill Edge account (the "Merrill Edge Account"), and the parties dispute the origins of the money in this account. Husband asserts that the money in the Merrill Edge Account originates from funds he deposited into a Hamilton Standard Credit Union account (the "Hamilton Standard Account") while employed there. These deposits occurred prior to the marriage but while the parties were living together. During this time, the parties maintained separate bank accounts, but also maintained a joint account, for shared expenses. Husband testified that he funded the Hamilton Standard Account with his earnings and only he could deposit money into the account because the bank was located in a defense contractor building to which only employees had access. Husband argued that when the parties moved from Connecticut to Arizona, the Hamilton Standard Account funds were used to open a different account with both parties being named on the account. No additional deposits were made into this account, and over time, the account's banking institution eventually became Merrill Edge. Wife acknowledged only Husband could deposit into the Hamilton Standard Account due to the credit union's location, but asserted that did not mean he earned all the money deposited into it.

{¶ 6}   The magistrate found the Merrill Edge Account to be marital property. It found "[t]here was no documentation provided that only Husband's pay went into the Hamilton Standard [Account] . . . [I]t is not clear that the account was funded by just one

of the parties." In adopting the magistrate's decision, the trial court also noted that Husband did not prove that only he funded the Hamilton Standard Account. The trial court further observed that both parties' names were on the Hamilton Standard Account. While recognizing Wife did not remember much about the Hamilton Standard Account, the trial court discounted this fact citing that the relevant "sequence of events [occurred] over 35 years ago."

*Standard of Review and Applicable Law*

{¶ 7}   We review the classification of property or debt as marital or separate under the manifest weight of the evidence standard and will not reverse a trial court's classification if it is supported by competent and credible evidence. *Smith v. Smith*, 2023-Ohio-982, ¶ 28 (12th Dist.).[1] In determining whether competent and credible evidence exists, "'[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony.'" *Grow v. Grow*, 2012-Ohio-1680, ¶ 11 (12th Dist.), quoting *Barkley v. Barkley*, 119 Ohio App.3d 155, 159 (4th Dist. 1997).

{¶ 8}   Under Ohio law, a party claiming a separate interest in property must establish that interest by a preponderance of the evidence. *Todor v. Ballesteros-Cuberos*, 2024-Ohio-4525, ¶ 9 (12th Dist.), citing *Peck v. Peck*, 96 Ohio App.3d 731, 734 (12th Dist. 1994). "This standard requires the claiming party to demonstrate that it is more likely than not that the asset in question is indeed separate property, rather than marital property subject to division in the divorce proceedings." *Id*. Separate interests in property "may be commingled with marital property without losing its distinct status, provided . . . it remains

---

1. Both parties incorrectly assert that we review the trial court's determination for an abuse of discretion.

traceable." *Id*. at ¶ 22, citing R.C. 3105.171(A)(6)(b).

{¶ 9} "Marital property" includes "[a]ll real and personal property that currently is owned by either or both of the spouses . . . and that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i). "'Marital property' does not include any separate property." R.C. 3105.171(A)(3)(b). In turn, "separate property" includes, but is not limited to real or personal property—or interest in real or personal property—acquired by one spouse prior to the marriage or after the decree of legal separation. *Id.* at (A)(6). Importantly, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).

*Analysis*

{¶ 10} Husband argues the magistrate and trial court erred in finding the Merrill Edge Account to be marital property because "Ohio law does not require . . . documentary proof of *all* transactions in a tracing analysis" (Emphasis in original.). Despite presenting a great deal of testimony and evidence seeking to trace the Merrill Edge Account to Hamilton Standard, he asserts on appeal "the only part of the tracing analysis he did not have was the deposit of his earnings in the Hamilton Standard Credit Union savings account."

{¶ 11} That, in and of itself, is the rub. As the magistrate observed, it is not clear that only Husband's income funded Hamilton Standard Account. Even though only Husband could physically deposit money into the Hamilton Standard Account due to the bank's secured location, that does not make it more likely than not that the account was Husband's separate property. During the relevant time period prior to the marriage, the parties had both separate and joint accounts—Husband presented no evidence that the money used to start the Hamilton Standard Account came solely from his separate money

prior to the marriage.

{¶ 12} Husband also argues Wife's credibility is suspect for various reasons, but Husband, as the party asserting a separate interest in the account, had the burden of demonstrating that interest. The passing of over 30 years since the opening of the Hamilton Standard Account undoubtedly hindered his ability to do so, but ultimately, Husband presented no documentary evidence to support Husband's assertion that only his money funded the Hamilton Standard Account. We therefore find it was not against the manifest weight of the evidence for the magistrate and trial court to determine that the Hamilton Standard Account, which became the Merrill Edge Account, constituted marital property.

{¶ 13} We overrule this assignment of error.

**Husband's Second Assignment of Error:**
**"Double Dipping" on Property Income**

*Factual Background*

{¶ 14} During the divorce proceedings, the magistrate issued several orders regarding the parties' spousal support obligations. First, in October of 2021, the trial court issued a temporary spousal support order requiring Husband to pay Wife $2,500 a month (the "Temporary *Court* Order"). That order outlined each parties' income, with Husband earning approximately $4,000 per month in pension and consulting income in an unknown amount. In addition, the Temporary Court Order noted Husband made up to $1,800 per month in rental income from the parties' rental home in Arizona.

{¶ 15} In November of 2021, the parties submitted a "Temporary *Agreed* Entry" to the court which stipulated Husband pay Wife's rent of approximately $3,000 per month as well as various other bills and expenses. The Temporary Agreed Entry did not mention income from the rental home. The parties sold the Arizona rental home after the

Temporary Agreed Entry but before trial. At trial, Husband testified he never took any money out of the account except to pay for expenses of the rental property. In its October 2023 decision recommending divorce, the magistrate ordered that bank account be split evenly between the parties.

{¶ 16} Husband objected to this. He reasoned that because the Temporary Court Order acknowledged his income included the rental income, and he paid spousal support from all of his income sources, forcing him to pay Wife spousal support and to equally divide the rental income account amounted to "double dipping" by Wife. The trial court overruled Husband's objection, citing the Temporary Court Order was, as its name suggested, inherently temporary nature and subject to modification (which it quickly was by the Temporary Agreed Entry). In addition, the court noted "there was no formal explanation" in the Temporary Agreed Entry "on how the parties arrived at the agreement they did."

*Applicable Law and Standard of Review*

{¶ 17} After classifying marital and separate property the trial court must equitably divide the property. *Humbarger v. Cassidy*, 2024-Ohio-5361, ¶ 13 (12th Dist.). The trial court's division of property will not be reversed absent an abuse of discretion. *Humbarger v. Cassidy*, 2024-Ohio-5361, ¶ 13 (12th Dist.). An abuse of discretion occurs where the trial court's decision is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶ 18} Husband advances the same arguments on appeal he did at the trial level. He argues because his spousal support already included Wife's half of the rental income, he should not be required to split the account evenly with her, particularly all rental income received after October 20, 2021, the end date of the parties' marriage for purposes of

dividing marital property.

**{¶ 19}** We find Husband's arguments unconvincing. As stated by the trial court, the Temporary Court Order and Temporary Agreed Entry, including their spousal support obligations, were (as their names suggested) temporary in nature and subject to modification. R.C. 3105.18(B) ("During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party"). Ohio law also expressly states that spousal support "does not include any payment made to a spouse" pursuant to the division of marital property. *Id.* at (A), R.C. 3105.171(A)(1).[2] The magistrate deemed the rental home, as well as the income derived from it, to be marital property. That classification is not contested on appeal. Due to the temporary nature of the court's support orders and the fact "there was no formal explanation" in the Temporary Agreed Entry "on how the parties arrived at the agreement they did," those orders carry limited, if any weight, in the magistrate's classification and distribution of the parties' marital property, including the rental income.

**{¶ 20}** Moreover, neither Husband's objections nor his appellate briefing seek to elaborate on or quantify the extent of the "double dipping" that purportedly occurred. Husband's assertion that his temporary spousal support payments were paid using rental income is undermined by his testimony that only rental property expenses were withdrawn from the account. Put simply, Husband has not "shown his work" and demonstrated that Wife has, in fact, double dipped.[3]

---

2. "'Distributive award' means any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in section 3105.18 of the Revised Code ['Spousal Support']." R.C. 3105.171(A)(1).

3. "It is not an appellate court's duty to 'root out' or develop an argument that can support an assignment of error, even if one exists." *Rathert v. Kempker*, 2011-Ohio-1873, ¶ 12 (12th Dist.), quoting *Hausser & Taylor, LLP v. Accelerated Systems Integration, Inc.*, 2005-Ohio-1017, ¶ 10 (8th Dist.).

{¶ 21} We therefore can find no abuse of discretion in ordering that the rental income be distributed evenly between the parties.

{¶ 22} This assignment of error is overruled.

**Wife's First Assignment of Error:**
**Purchase Price of Husband's Post Marital Home**

*Factual Background*

{¶ 23} The Temporary Agreed Entry stated, in relevant part, that Husband signed a contract to purchase a new home and had a closing date set. The order further stated, "After the purchase of the property, the value of the house at $515,000.00 is considered marital and will be offset against any division of marital assets should the parties not reconcile." After an inspection of the home reduced its price, Husband purchased the home for $512,500. As a result, the magistrate and trial court both concluded Wife's offset should be reduced to $512,500. Wife objected to this, but her objections were overruled.

*Analysis*

{¶ 24} Wife asserts the Temporary Agreed Entry—which stated Husband's post-marital home at $515,000—was a contract that courts should be very hesitant to rescind. This court is well aware of the contractual principles Wife refers to, but none of them demonstrate why the Temporary Agreed Entry should be deemed a contract or "binding settlement agreement" to begin with. *Spercel v. Sterling Industries, Inc.,* 31 Ohio St.2d 36 (1972). We will not make that case for her. *Rathert v. Kempker*, 2011-Ohio-1873, ¶ 12 (12th Dist.). As stated above in Husband's second assignment of error, the Temporary Agreed Entry was, as its name states, *temporary* in nature and reflected the facts of the case as they were at that moment. Those facts subsequently changed. We therefore conclude the magistrate and trial court did not abuse their discretion in equitably reducing Wife's offset amount to reflect the ultimate purchase value of the home.

{¶ 25} This assignment of error is overruled.

## Wife's Second Assignment of Error:
## Failure to Classify and Divide Accounts for the Benefit of Parties' Sons

{¶ 26} Before filing for divorce, Husband and Wife maintained certain custodial accounts for their sons. The magistrate's original decision recommending divorce did not mention the accounts, but a later order by the magistrate declared the accounts belong to the parties' now adult sons and that the court had no jurisdiction over them.[4] The divorce decree is also silent on this issue.

{¶ 27} Wife argues that by failing to address the accounts of the parties' children, the domestic relations court shirked its statutory obligation to determine what constituted marital property and what constituted the parties' separate property.

{¶ 28} Under Ohio law, a domestic relations court has no jurisdiction over "custodial property," including "[a]ll securities, money . . . and other types of property" supervised by a child's custodian. R.C. 5814.01(D); R.C. 5814.04; *Brown v. Brown*, 2009-Ohio-2204, ¶ 49 (12th Dist.). Such jurisdiction is exclusively reserved for probate courts. *Id.* at (C). Our sister courts have held similarly. *Miller v. Miller*, 2008-Ohio-4297, ¶ 20 (9th Dist.) ("A custodial account held for the benefit of a child is neither marital or separate property"); *Baum v. Perry-Baum*, 2019-Ohio-3923, ¶ 46 (6th Dist.); *Heitmeyer v. Arthur*, 2022-Ohio-4230, ¶ 30 (3rd Dist.).

{¶ 29} Put simply, Wife's argument on appeal makes no attempt to address the crux of the issue raised by the domestic relations court—whether or not it had the jurisdiction to classify and divide accounts made for the benefit of the parties' (now adult) children. Her briefing merely assumes it did. Again, we will not make Wife's arguments

---

4. Husband implies that Wife did not raise this objection at the trial level, but she did object to the magistrate's later decision which expressly discussed the sons' accounts. We thus conclude appellate review is not precluded.

for her, and we therefore see no reason to question the lower court's refusal to exercise jurisdiction over these accounts.

{¶ 30} We overrule this assignment of error.

{¶ 31} Judgment affirmed.

HENDRICKSON, P.J., and BYRNE, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 50% to Appellant and 50% to Appellee.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Matthew R. Byrne, Judge

/s/ Melena S. Siebert, Judge